# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY C. JOHNSON, Inmate #B45089,   ) | |
|     ) | |
|     **Plaintiff,**   ) | |
|     ) | |
| **vs.**   ) | |
|     ) | |
| EDWANA BOWERS, ROGER WALKER,   ) | |
| SHELTON S. FREY, MARVIN POWERS,   ) | |
| DANNY BRITTON, DAVID MITCHELL,   ) | **CIVIL NO. 05-148-WDS** |
| KENNETH HAMILTON, C/O BOLLIN,   ) | |
| THOMAS ANDERSON, JUAN   ) | |
| BERNARD, LT. OSMAN, ILLINOIS   ) | |
| DEPARTMENT OF CORRECTIONS, and   ) | |
| JAMES STARKWHETHER,   ) | |
|     ) | |
|     **Defendants.**   ) | |
|     ) | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Plaintiff, an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are frivolous and subject to summary dismissal.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.[1]

COUNT 1:    Against Defendant Bowers, Walker, and the Illinois Department of Corrections for unconstitutional retaliation.

COUNT 2:    Against Defendant Powers for unconstitutional use of excessive force.

COUNT 3:    Against Defendant Powers for unreasonable search and seizure in violation of the Fourth Amendment.

COUNT 4:    Against Defendant Powers for violations of the equal protection clause of the Fourteenth Amendment.

COUNT 5:    Against Defendants Powers, Bollin, and Anderson for violations of state law.

COUNT 6:    Against Defendants Bollin and Anderson for failing to intervene in an attempt to prevent Defendant Powers from violating Plaintiff's constitutional rights.

COUNT 7:    Against Defendant Powers for unconstitutional retaliation.

COUNT 8:    Against Defendants Britton and Hamilton for due process violations in a disciplinary hearing.

---

[1]These designated Counts do not correspond to the counts described by Plaintiff in his complaint.  Parties will use the Counts designated by the Court in all future submissions.

COUNT 9:      Against Defendants Britton and Hamilton for unconstitutional retaliation.

COUNT 10:     Against Defendants Mitchell and Hamilton for due process violations in a disciplinary hearing.

COUNT 11:     Against Defendants Bernard, Osman, Mitchell, Hamilton, Frey, Walker, and the Illinois Department of Corrections for violating Plaintiff's rights under the equal protection clause of the Fourteenth Amendment.

COUNT 12:     Against unspecified defendants for violations of the First Amendment in denying Plaintiff published materials.

COUNT 13:     Against Defendants Frey, Walker, and the Illinois Department of Corrections for unconstitutional retaliation.

## COUNT 1

On February 28, 2003, Plaintiff was issued a disciplinary report charging him with sexual misconduct, insolence, and violation of institutional rules. The report, submitted with Plaintiff's complaint, indicates that C/O Potocki (not a defendant) was making a count on Plaintiff's wing and saw Plaintiff throwing paper onto the wing floor. Plaintiff also came to the front of his cell and yelled at C/O Potocki using expletives and making sexually suggestive remarks and sexual gestures with his hands and genitals. Plaintiff's witnesses testified that they heard Plaintiff cursing at C/O Potocki. Plaintiff states that he was in his cell naked, standing at his sink, washing himself, and that he did not make any sexual gestures or remarks.

At the subsequent disciplinary hearing on March 4, 2003, Plaintiff's witnesses were interviewed, and their statements made part of the record. Plaintiff was found guilty of insolence, safety violations, disobeying a direct order, and violating general rule 7, but not guilty of sexual misconduct. He was disciplined with a one-month demotion to c-grade, one month in segregation, and a one-month loss of commissary privileges. Plaintiff states that Defendant Bowers falsified the witness statements in the hearing and that she never actually contacted the witnesses. Plaintiff

claims that the finding of guilt and disciplinary measures were taken by Defendant Bowers in retaliation for Plaintiff's prior lawsuits against her.  Plaintiff further argues that Defendant Walker and the Illinois Department of Corrections also retaliated against him.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Specifying the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*  Accordingly, Count 1 cannot be dismissed at this point in the litigation.

A word about defendants is in order, however.  Plaintiff states that Defendants Walker and the Illinois Department of Corrections ("IDOC") retaliated against him.  Plaintiff does not make any specific allegations against Defendant Walker.  Defendant Walker is therefore dismissed as a defendant from this Count.[2]  The IDOC is immune from suit under the Eleventh Amendment and therefore must also be dismissed.  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v.*

_____

[2]"A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."  *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene).

*Indiana Department of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same).  In summary, Plaintiff may proceed on Count 1 only against Defendant Bowers.

### COUNT 2 - 7

On August 15, 2003, Plaintiff put in a sick call request and saw Defendant Powers in the Tamms Health Care Unit for "irregular urination."  At the appointment, Defendant Powers attempted to insert a catheter into Plaintiff.  This procedure caused Plaintiff so much pain, that Plaintiff began yelling and requested, mid-procedure, that Defendant Powers remove the catheter, and then refused further treatment.  Defendant Powers, however, continued to attempt to insert the catheter, "forcibly extracting [Plaintiff's] urine against [his] consent."  Plaintiff asked Defendants Bollin and Anderson to make Defendant Powers stop the procedure, but they just held Plaintiff down while Defendant Powers continued.  Eventually, Defendant Powers yanked the catheter out, causing Plaintiff to urinate on himself.  Plaintiff argues that this incident violated a number of his constitutional rights.

### COUNT 2

Plaintiff claims that Dr. Powers acted "maliciously and sadistically" to cause Plaintiff pain, in violation of the Eighth Amendment, and that his actions constituted sexual assault.  The intentional use of excessive force by prison officials against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry

- 5 -

is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Regarding events prior to the moment that Plaintiff requested that Defendant Powers stop the procedure, Plaintiff failed to state a claim for excessive force because Plaintiff specifically requested medical treatment and therefore implicitly gave his consent thereto.  However, after Plaintiff began yelling out in pain and Defendant Powers continued with the procedure despite Plaintiff's protestations, Plaintiff states a claim for unconstitutional use of excessive force, particularly when, as specified below, Plaintiff believes Defendant Powers acted in retaliation for a prior lawsuit Plaintiff had filed against him.  As to Plaintiff's claims that the actions of Defendant Powers constituted sexual assault, the Court finds that Plaintiff has failed to state a claim.  A requested medical procedure is not sexual assault.  As noted above, Plaintiff consented to the procedure.  That he withdrew that consent while it was being performed does not convert it to sexual assault.  Therefore, Plaintiff may proceed against Defendant Powers on only the excessive force claim in Count 2.

## COUNT 3

Plaintiff claims that the extraction of urine after he withdrew his consent mid-procedure, constituted a search in violation of the Fourth Amendment.  The Court has not found any case in

which a medical procedure, other than the taking of urine or blood samples for drug testing, was considered a search. It is well-settled that prisoners retain a limited expectation of privacy in their persons. *Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir. 1992), *cert. denied*, 507 U.S. 950 (1993). Body searches must therefore be reasonable. Deciding what is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Courts must consider the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*

In *Forbes*, the Seventh Circuit held that "urine tests are searches for Fourth Amendment purposes." *Id.* However, in that case, the Court was analyzing the use of an inmate's urine to test for drug use. This case differs in that the extraction of urine here was not for a penological purpose (preventing drug use), but a medical one. Moreover, it was a medical procedure that Plaintiff himself requested when he sought medical treatment; the catheterization was not forced on him by prison rule or regulation, but at his request and in an effort to provide him medical treatment. Thus, the Court finds that the taking of the urine was not a "search" for Fourth Amendment purposes. Accordingly, Plaintiff has failed to state a Fourth Amendment claim of illegal search and seizure on the facts alleged. Therefore, Count 3 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## Count 4

Plaintiff states that Defendant Powers's actions during the medical procedure violated Plaintiff's rights under the equal protection clause because Plaintiff is black and Defendant Powers is white.

> [T]he "Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of

state powers...." *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). A plaintiff "must demonstrate intentional or purposeful discrimination" to show an equal protection violation. *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980) (per curiam). "'Discriminatory purpose' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Administrator of Massachusetts v. Feeny*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). It implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

*David K. v. Lane*, 839 F.2d 1265, 1271-72 (7th Cir. 1988).

To state an equal protection claim, Plaintiff must show that he was discriminated against based on a constitutionally protected characteristic. *See Jones v. Ray*, 279 F.3d 944, 946,47 (11th Cir. 2001) (affirming dismissal pursuant to section 1915, finding that to state an equal protection claim a prisoner must allege facts that show he a) is similarly situated with other inmates who received "more favorable treatment," and b) was treated differently on the basis of a constitutionally protected interest). Plaintiff has not made any allegations that white inmates were or would have been treated differently by Defendant Powers in this situation. There is no doubt that Plaintiff's facts do allege other constitutional violations by Defendant Powers, but they do not state an equal protection claim. Accordingly, Count 4 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 5

Plaintiff states that Illinois law entitled him to make a citizens arrest of Defendant Powers, and that Defendants Bollin and Anderson prevented Plaintiff from so doing. Plaintiff has no constitutional right to arrest a prison official. An Illinois statute may grant a private citizen the right to make such an arrest, *see* 725 ILCS 5/107-3, but "the federal government is not the enforcer of state law." *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Based on these facts, Plaintiff has not stated a claim of constitutional dimension. *See West v. Atkins*, 487 U.S. (1988) ("[t]o state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States").

Plaintiff also states that Illinois prison regulations require that forcible medical treatment of a prisoner requires the determination of at least two physicians. Again, the court does not enforce state law. The Court knows of no constitutional right to a medical determination by more than one physician. "The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." *Vruno v. Schwarzwalder*, 600 F.2d 124, 130-31 (8th Cir. 1979) (citations omitted). Accordingly, Count 5 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 6

Plaintiff argues that Defendants Bollin and Anderson failed to protect Plaintiff from Defendant Powers's use of force in inserting the catheter, instead continuing to hold Plaintiff down so Defendant Powers could finish the procedure. Plaintiff asserts that these defendants are equally liable due to their failure to intervene. The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and they stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F,2d 480, 491 (7th Cir. 1987).  It does not seem clear to the Court that Defendant Powers was exceeding his authority in his attempts to insert the catheter in such a way that it would be apparent to Defendants Bollin and Anderson that they needed to intervene to prevent the violation of Plaintiff's constitutional rights.  However, at this point in the litigation, the Court must take all of Plaintiff's allegations as true.  Accordingly, Plaintiff may proceed against Defendants Bollin and Anderson on Count 6 of the complaint.

## COUNT 7

Plaintiff states that Defendant Powers acted in retaliation for a prior lawsuit Plaintiff had filed against him.  *See Johnson v. Ramsey*, Case No. 00-185-JPG (S.D. Illinois, filed March 14, 2000).  As stated above, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Specifying the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*  Based on Plaintiff's allegations and these legal standards, Count 7 cannot be dismissed at this point in the litigation.

## COUNTS 8 AND 9

On September 10, 2003, Plaintiff was issued a disciplinary report charging him with damage or misuse of property for destroying a library book by tearing it into pieces and throwing the pieces into the gallery.  At a subsequent disciplinary hearing held before the adjustment committee (Defendants Britton and Hamilton), Plaintiff was found guilty and disciplined with a one-month demotion to c-grade, one month in segregation, one month loss of library privileges, and restitution in the amount of $35.00 to cover the cost of the book.  Plaintiff alleges the following irregularities in the disciplinary process.  Plaintiff did not have a library book in his cell, it was a book he owned. Plaintiff could not have had a library book because both he and his cell had been thoroughly searched by Defendant Starkwhether prior to him throwing the paper.  Plaintiff requested five witnesses that were not called in the hearing.  Plaintiff requested that the wing camera tapes be reviewed, but they were not.  Crucial facts used to find him guilty of the offense were not listed in the disciplinary report, such as the name of the book and the fact that the pages had pink edges, indicating it was a library book.  The disciplinary report used to find him guilty was not the same report he was served prior to the hearing.  Potentially exculpatory evidence was either not allowed in the hearing or it was ignored by the adjustment committee.

## COUNT 8

Plaintiff states that these irregularities violated his due process rights.  When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*.  In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state.  *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).  If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison.  *Id.*  In the view of the Seventh Circuit, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.*  Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for one month.  Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois.  Plaintiff also claims that he was demoted to c-grade.  However, this allegations does not present a viable constitutional claim.  *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to c-grade status).  As for the loss of library access and restitution, Plaintiff has not shown how these requirements imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life.  Therefore, Plaintiff's due process claim is without merit; Count 8 is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915A.

<u>**COUNT 9**</u>

Plaintiff also states that Defendants Britton and Hamilton, in finding him guilty, were acting in retaliation for a prior lawsuit against them. Based on the standards for retaliation as described in Count 1, the retaliation claim against these defendants cannot be dismissed at this point in the litigation. Accordingly, Plaintiff may proceed against Defendants Britton and Hamilton on the retaliation claim in Count 9.

**COUNTS 10 AND 11**

Based on the exhibits submitted with the complaint and Plaintiff's stated allegations, the Court has gleaned the following. On September 25, 2004, Defendant Bernard passed out food trays on Plaintiff's wing. Plaintiff noticed a mark on the tray served to him that he believed contaminated his tray. Defendant Bernard told Plaintiff the mark was a permanent stain from the dishwasher that did not contaminate the food or the tray. Plaintiff began using foul language and racial slurs toward Defendant Bernard and demanded a new tray. When Defendant Bernard later returned to the wing to pick up the food trays, Plaintiff refused to give him his tray. Defendant Bernard gave Plaintiff three direct orders to give him the tray, but Plaintiff refused, using foul language and racial epithets the whole time. Defendant Bernard contacted Lieutenant Osman, who came to Plaintiff's cell and removed the tray. Defendant Bernard wrote Plaintiff a disciplinary report charging him with disobeying a direct order and insolence.

The adjustment committee (Defendants Mitchell and Hamilton) conducted a hearing on October 7, 2004. The committee recommended a continuance and "that the IDR be rewritten, reserved, and reheard to better clarify the charges." The committee withheld descriptions of witness statements until the final hearing. Defendant Bernard rewrote the disciplinary report on October 9,

2004, to better clarify the allegations in the charges of disobeying a direct order and insolence. The adjustment committee (Defendant Mitchell and Yolanda Ivy, not a defendant) held a second disciplinary hearing on October 13, 2004, in which the statements of four witnesses were made part of the record. Plaintiff was found guilty of the charges and was disciplined with a one month demotion to c-grade and one month in segregation.

## COUNT 10

Plaintiff claims that the following procedural irregularities violated his due process rights. He was entitled to thirty minutes for eating his meal, but Defendant Bernard returned for the trays after only ten minutes. Defendant Bernard would not open the food port door so that Plaintiff could return his tray. Defendant Bernard never gave a direct order to turn over the tray, and even if he had, Plaintiff could not have complied with it because the food port door was closed. Defendant Bernard's disciplinary report was false because it did not say anything about the closed food port door. At the first hearing, Defendant Mitchell told Plaintiff the entire disciplinary report would be expunged. Instead, the hearing was merely continued. At the hearing, the witnesses were not asked the questions Plaintiff requested that they be asked, and therefore their testimony did not exonerate Plaintiff as it could have had other questions been asked. Defendant Frey did not approve the adjustment committee report in the time specified by department rule. There was insufficient evidence that Plaintiff disobeyed a direct order or that he was insolent. He was denied staff assistance in the hearing. Video tape of the incident showed that Defendant Bernard never opened the food port door. Inmate Gilbert's testimony was omitted from the report. Exonerating evidence was disregarded. Witnesses were interviewed before the hearing, not at the hearing, in violation of department rule. Yolanda Ivy signed the report but she was not "on the committee" on the date of

the hearing, in violation of department rule.

As stated above in Count 8, unless Plaintiff can show the loss of a liberty interest, he has not stated a claim and the Court will not go on to evaluate the amount of process he received. Here Plaintiff was demoted to c-grade for one month and was placed in segregation for one month. Neither of these deprivations implicates a liberty interest, so Plaintiff has failed to state a due process claim.

Plaintiff also claims that he was disciplined by receiving meal loaf, although this was not specified in the disciplinary report or adjustment committee report. Plaintiff has no liberty interest in remaining on a "normal" diet, as opposed to one consisting solely of meal loaf and water. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). *See generally Sandin v. Conner*, 515 U.S. 472 (1995); *Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir.1997). Therefore, placement on such a diet does not require constitutional safeguards. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974). Accordingly, Plaintiff has also not stated a constitutional claim regarding being served meal loaf.

Plaintiff also states that he was "denied segregation cuts and restoration of all my los[t] GCC's and 90 days meritorious good time . . . that but for meal loaf and false IDR I would not have gotten full relief." The disciplinary report Plaintiff himself submitted with the complaint shows only that Plaintiff was disciplined with a one-month demotion to c-grade and one month in segregation. The report does not state that Plaintiff lost good conduct credit. The Court believes that Plaintiff means that by being disciplined for the refusal to return the tray he lost the opportunity to earn back ***prior*** lost good conduct credits.

A loss of good time credit does implicate a liberty interest because such a loss potentially

affects the length of Plaintiff's sentence.  However, the Court doubts that Plaintiff's statement here

that he lost merely an opportunity to earn back prior lost good time credit would sufficiently state

a claim.  If it were a sufficient statement of a loss of a liberty interest, and the Court is not finding

that it is, the proper method for challenging the revocation of good time credit is habeas corpus, but

only after Plaintiff has exhausted his remedies through the Illinois state courts.  *See, e.g., Heck*, 512

U.S. at 480-81.  The Illinois courts have recognized mandamus as an appropriate remedy to compel

prison officials to award sentence credit to a prisoner.  *Taylor v. Franzen*, 93 Ill.App.3d 758, 417

N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981).  *See also United States ex rel.*

*Isaac v. Franzen*, 531 F. Supp. 1086, 1091-94 (N.D. Ill. 1982).  The State of Illinois must first be

afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq*. to consider

the merits of Plaintiff's claim.  Plaintiff must exhaust his state court remedies before bringing his

claims to federal court. Accordingly, Count 10 is  **DISMISSED** without prejudice.

## COUNT 11

Plaintiff states that Defendants Bernard, Osman, Mitchell, Hamilton, Frey, Walker, and the

Illinois Department of Corrections violated his rights under the equal protection clause of the

Fourteenth Amendment.  He states that all the actions described above were taken against him

because he is black.

As explained in Count 4, above, to state an equal protection claim, Plaintiff must show that

he was treated differently because of his race by showing that other similarly situated inmates

received more favorable treatment based on the constitutionally protected characteristic, and by

showing that defendants acted with a discriminatory purpose.  Here Plaintiff has not shown that he

was treated differently from other similarly situated inmates.  The fact that Plaintiff is black is not

a sufficient statement to show that he was disciplined in the manner he was **because** he is black.

Accordingly, Count 11 is **DISMISSED** from the action with prejudice.  See 28 U.S.C. § 1915A.

### COUNTS 12 AND 13

Plaintiff states that he was mailed three medical books, *The Pill Book*, *The Laboratory Book*, and *The Medicine Show*, but he never received them because the Publication Review Committee (not named as defendants) denied them.  Plaintiff argues that being denied these books violates his rights under the First Amendment.  He further argues that the denial of these books was an act of retaliation by Defendants Frey, Walker, and the IDOC because Plaintiff was going to use the books for research in other lawsuits he had filed against IDOC officials.

### COUNT 12

"[T]he arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996), *quoting Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988).  However, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The Court cannot make this evaluation at this point in the litigation because Plaintiff has alleged facts that state a First Amendment claim.

However, Plaintiff's claim must fail because he has not named the individuals responsible for denying him these materials.  The reason that Plaintiffs, even those proceeding pro se, for whom the Court is required to liberally construe their complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the

complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement

of the claim suffices under Fed. R. Civ. P. 8 if it notifies the defendant of the principal events upon

which the claims are based); *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice

pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing

a right to recovery"). Here, Plaintiff does not specify by name any of the defendants responsible for

denying him the materials, nor does he name them in the caption of the complaint.  Therefore,

Plaintiff has failed to state a claim against any defendants.  Accordingly, Count 12 is **DISMISSED**

from the action without prejudice to Plaintiff's filing an amended complaint to specify, by name, the

individuals responsible for violating his First Amendment rights.

## COUNT 13

Plaintiff states that the denial of these books constitutes retaliation by Defendants Frey,

Walker, and the IDOC.  Based on the standards described above in Counts 1 and 9, and Plaintiff's

factual allegations, Plaintiff has stated a retaliation claim on these facts.  However, the IDOC must

be dismissed from the Count because the IDOC is immune from suit under the Eleventh

Amendment.  Accordingly, Plaintiff may proceed against Defendants Frey and Walker on Count 13.

### DISPOSITION

In summary, Plaintiff may proceed on Count 1 against Defendant Bowers; on the excessive

force claim in Count 2 against Defendant Powers; on Count 6 against Defendants Bollin and

Anderson; on Count 7 against Defendant Powers; on Count 9 against Defendants Britton and

Hamilton; and on Count 13 against Defendants Frey and Walker.  Counts 3, 4, 5, 8, 10, 11, and 12

are **DISMISSED** from the action, as are Defendants Bernard, Osman, Mitchell, Illinois Department

of Corrections, and Starkwhether.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants Bowers, Powers, Bollin, Anderson, Britton, Hamilton, Frey, and Walker***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Bowers, Powers, Bollin, Anderson, Britton, Hamilton, Frey, and Walker*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from IDOC pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the

- 19 -

request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties*

*consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED:  October 26, 2006**

**<u>s/ WILLIAM D.  STIEHL</u>**
**DISTRICT JUDGE**