IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TERRY C. JOHNSON, B-45089 | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 05-148-WDS-DGW |
|  | ) |  |
| EDWANA BOWERS, et. al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**REPORT AND RECOMMENDATION**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Thomas Anderson, Danny Britton, Beau Bolin, Edwana Bowers, Kenneth Hamilton, R. Shelton Frey, and Roger E. Walker (collectively "IDOC defendants") (Doc. 63) and a Motion for Summary Judgment filed by defendant Marvin Powers, M.D. (Doc. 67). For the reasons discussed below, it is **RECOMMENDED** that the Court adopt the following findings of fact and conclusions of law and that the motions be **GRANTED.**

**Findings of Fact**

On March 1, 2005, Plaintiff Terry C. Johnson ("Plaintiff") filed this lawsuit while he was incarcerated at the Tamms Correctional Center (TCC). He claims defendants, who all work in various positions at TCC, infringed upon his constitutional rights in violation 42 U.S.C. §1983. On October 26, 2006, the Court conducted its preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. §1915A. *See* Doc. 5. The Court allowed Plaintiff to bring retaliation claims against defendants Bowers, Britton, Hamilton, Frey, Walker, and Powers, a failure to intervene claim against defendants Anderson and Bolin, and an excessive force claim against defendant Powers. *Id.*

1

As discussed more in detail below, Plaintiff's disputes with all these defendants (except defendants Frey and Walker) arise out of three unrelated incidents that took place at TCC in 2003. The first incident concerns two disciplinary reports Plaintiff received on February 28, 2003. The second relates to a doctor's appointment Plaintiff had with defendant Powers on August 15, 2003. The third incident involves another disciplinary report issued to Plaintiff on September 10, 2003. The Court will discuss each of these incidents in turn.

**<u>Disciplinary Reports Issued to Plaintiff on February 28, 2003</u>**

On February 24, 2003, defendants Bowers, Britton, and Hamilton were all served with process advising them that Plaintiff had sued them in Illinois state court (Doc. 63). Four days later, on February 28, 2003, Plaintiff received two disciplinary reports because a correctional officer observed Plaintiff throwing pieces of torn paper onto the wing floor and making sexual gestures, and he heard Plaintiff cursing and threatening him. *Id.* Consequently, Plaintiff was charged with sexual misconduct, insolence, safety violations, disobeying a direct order and violating general rule 7. *Id.*

Defendant Bowers served as the hearing investigator for the disciplinary reports Plaintiff received on February 28, 2003. *Id.* As part of her duties as hearing investigator, she investigated the charges alleged in the two reports and interviewed two witnesses Plaintiff asked her to interview: Correctional Officer Welch and Correctional Officer Vaughn. *Id.* Officer Welch reported that he heard Plaintiff curse at officer Potocki. Officer Vaughn stated he also heard Plaintiff yell and curse at Potocki and further saw Plaintiff shake "his package" at him. *Id.* at p. 24. Based on these interviews, defendant Bowers concluded that Plaintiff was guilty of all five charges. Bowers claims her finding was not motivated by any intent to retaliate against Plaintiff for filing a lawsuit against her. *Id.* To summarize her actions and her findings, Bowers wrote a

"hearing investigative report." *Id.* at p. 24. Both Welch and Vaughn submitted affidavits that stated Bowers asked them the questions written on her investigative report and that Bowers accurately recorded their responses to those questions. *Id.* at pp. 34-35. This report stated that Bowers interviewed Welch and Vaughn on March 4, 2003.

Plaintiff asserts Bowers could not have possibly interviewed Welch on March 4, 2003, as her investigatory report states, because he did not tell her that he selected Welch as his witness until the morning of March 4, 2003, and Welch did not work that day. *See* Doc. 78, p. 3, 15. Plaintiff therefore contends Welch did not make the statements Bowers wrote in her report, and Bowers made them up to defeat his defense. *Id.*

On March 4, 2003, the Adjustment committee held a hearing about Plaintiff's disciplinary reports and considered defendant Bower's findings. *See* Doc. 63-2, pp. 13-14. Defendant Danny Britton is the Chairperson of the Adjustment Committee. *See Id.* The committee called[1] both Welch and Vaughn as witnesses, and they both stated they heard Plaintiff curse Potocki, and Vaughn further stated he saw Plaintiff make a sexual gesture at Potocki. *Id.* During the hearing, Plaintiff admitted he was guilty of insolence and throwing paper, but denied his guilt as to the disobeying a direct order and sexual misconduct. *Id.* The Adjustment Committee found Plaintiff guilty of all of the charges except the sexual misconduct charge. *Id.* As a result of its finding, Plaintiff received a C Grade demotion, one month of segregation and one month of loss of commissary. *Id.*

**Plaintiff's doctor's appointment on August 15, 2003**

In March of 2003, Plaintiff started to have problems with urinating and began to experience abdominal pain (Doc. 67, pp. 6-7). Defendant Powers examined Plaintiff to determine the cause of

---

[1] It is unclear to the Court whether the Adjustment Committee called these witnesses to testify, as the Adjustment Committee's report states, or whether they read Welch's and Vaughn's statements recorded in defendant Bower's report. *See* Adjustment Committee Final Summary Report (Doc. 63-2, p, 18).

these symptoms several times; however, the examinations and urinalysis tests defendant Powers performed came back normal. *Id.* Consequently, defendant Powers determined there was nothing left to do other than a catheterization to determine the source of Plaintiff's pain. *Id.* at pp. 2-7. Defendant Powers contends that his decision to catheterize Plaintiff was not based upon any lawsuit or grievance Plaintiff had filed, but rather his decision was based upon his medical judgment and Plaintiff's continued complaints that he had problems urinating. *Id.* at p. 7. Plaintiff ultimately consented to the catheterization. *Id.* at p. 6-7; Doc. 78-2, p. 15.

On August 15, 2003, Defendants Bolin and Anderson, Correctional Officers at TCC, escorted Plaintiff to his appointment with defendant Powers (Doc. 63-2, pp. 26-27; 30-31). Defendants Bolin and Anderson have no medical training - they escorted Plaintiff to his doctor's appointment and remained there until his appointment ended simply because of security reasons. *Id.* As planned, defendant Powers inserted the catheter into Plaintiff (Doc. 67, pp. 6-7). But what occurred during the procedure is where the parties' facts part ways.

According to Plaintiff, the catheterization caused him to scream out in pain and he told defendant Powers he "couldn't take it" (Doc. 80, p. 26). He further contends he told defendant Powers to stop the procedure but Powers ignored his plea, continued inserting the catheter, and extracted urine from him. *Id.* All during this time, Plaintiff maintains, he begged defendants Bolin and Anderson to help him and make Power stop but they too ignored him and held him down while defendant Powers continued catheterizing him. *Id.* at p. 27. Plaintiff claims that defendant Powers refused to stop the procedure because Plaintiff filed a lawsuit against him in 2000 and also filed grievances against him. *See* Doc. 5; *see* Doc. 80, p. 13.

Defendant Powers on the contrary does not recall Plaintiff complaining at all during the procedure, and states that Plaintiff did not ask him to stop the procedure, which took no longer than one minute (Doc. 67, pp. 6-7). However, defendants Bolin and Anderson do remember Plaintiff asking defendant Powers to stop and that defendant Powers immediately ended the medical procedure once Plaintiff requested that he stop. (Doc. 63-2, pp. 26, 30). They further contend Dr. Powers used only the force that was necessary to remove the catheter and they did not observe him using any force that required them to intervene. *Id.*

Plaintiff contends that as a result of the continued catheterization, he experienced more severe stomach pains that he experienced before, and during the two week time period after the procedure, he submitted eleven request slips to TCC medical staff (Doc. 80, p. 28). Defendant Powers states that the requests slips Plaintiff submitted after the procedure relate to his back, stomach, and teeth, and do not refer at all to the catheterization (Doc. 67, p.11).

**Disciplinary Reports Issued to Plaintiff on September 10, 2003**

On September 10, 2003, a TCC officer observed Plaintiff throwing trash that defendants maintain were pages from a book onto the prison's gallery (Doc. 63-2, p. 20). As a consequence, Plaintiff received a disciplinary report for "Damage or Misuse of Property" (Doc. 63, p.3).

Defendants Britton and Hamilton were the two members of the Adjustment Committee that held a hearing on this disciplinary report. *Id.* at p. 3. When the hearing began, Plaintiff asked defendants Britton and Hamilton to recuse themselves from conducting the hearing because of the lawsuits he filed against them, and because defendant Hamilton observed Plaintiff throwing the paper onto the gallery. Plaintiff claims these defendants should have recused themselves from conducting the hearing because of the lawsuit he filed against them, and because defendant Hamilton personally observed Plaintiff throwing paper onto the gallery (Doc. 78-2, pp. 9,10).

During the hearing, Plaintiff admitted to tearing up the book because he was angry that his law library time had been cut short but claimed he had a right to tear up the book because it belonged to him (Doc. 63-2, pp. 28, 32; Doc. 78-2, pp. 7-8, 12). The Adjustment Committee found otherwise and determined that the pages were from the Federal Rules of Civil Procedure owned by TCC. *Id.* The Adjustment Committee therefore found Plaintiff guilty and recommended that Plaintiff receive one month C grade, one month in segregation, one month loss of library privileges, and a $35.00 restitution fee to be paid to the State of Illinois. *Id.* at pp. 29, 33. Defendants Britton and Hamilton contend they found Plaintiff guilty because of the evidence before them and not out of retaliation. *Id.*

## Conclusions of Law

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Haefling v. United Parcel Service, Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, 16 F.3d 832, 836 (7th Cir. 1994). "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 320 (1986). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999).

A fact is material if it is outcome determinative under applicable law. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999); *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997); *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons*, Inc., 105 F.3d 343, 346 (7th Cir. 1997); *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994); *Dempsey*, 16 F.3d at 836. In deciding such a motion, the trial court must determine whether the evidence presented by the opposing party is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Haefling,* 169 F.3d at 497-98.

### Plaintiff's Retaliation Claims

To prevail on a retaliation claim, a plaintiff must demonstrate that a defendant retaliated against him for engaging in constitutionally protected conduct. *See Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). The plaintiff must prove that his conduct was a "motivating factor" in the state official's decision to retaliate against him. *Hasan v. United States Dept. of Labor,* 400 F.3d 1001, 1006 (7th Cir. 2005). However, a "motivating factor" is not "necessarily the reason" the state official takes a

7

certain action. *Id.* "A motivating factor . . . is a factor that weighs in [on] the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Id.*

"An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (citing *Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir. 1984) (limited on other grounds by *Salazar v. Chicago*, 940 F.2d 233, 240-41 (7th Cir. 1991). "This includes retaliation against an inmate for exercising his constitutional right to access the courts or to use the prison grievance process." *Id; and see Rogers v. Hulick,* 2009 WL 56885, *4 (C.D. Ill. Jan. 6, 2009) (citing *Hoskins v. Lenear,* 395 F.3d 372, 375 (7th Cir. 2005) (noting "[p]risoners are entitled to utilize available grievance procedures without the threat of recrimination, and if a prison official retaliates, he violates the inmate's First Amendment rights." However, the burden on the inmate is "high" as he must show that his protected conduct was a motivating factor for the retaliation. *Babock*, 102 F.3d at 275. Moreover, "the ultimate question is whether events would have transpired differently absent the retaliatory motive." *Id.* "If the same action would have occurred regardless of the retaliatory motive, the claim fails." *Spiegla v. Hull,* 371 F.3d 928, 942 (7th Cir. 2004).

As noted above, Plaintiff's retaliation claim against defendants Bowers, Britton, and Hamilton stem from the fact that on February 24, 2003, they were served with process and thus notified that Plaintiff sued them in another lawsuit (Doc. 63). Plaintiff maintains this lawsuit was a "motivating factor" in Bower's decision to "falsify" the witness statements and conclude in her investigative report that he was guilty of the charges contained in the two disciplinary reports he received on February 28th 2003 (Doc. 63-2, pp. 16-17, Doc. 78 , p.15). Plaintiff similarly contends that the other lawsuit was the reason defendants Hamilton and Britton, as members of the

8

Adjustment Committee, determined Plaintiff was guilty as charged in the disciplinary report he received in September of 2003 (for damaging and misusing property) (Doc. 78, p.9). All there of these defendants maintain they are entitled to prevail on their motion for summary judgment because their actions were not motivated by the lawsuit Plaintiff had filed, but because of the evidence substantiating the charges (Doc. 63, p. 8; Doc. 63-2, pp. 23, 28, 33).

The Court agrees with defendants Bowers, Britton and Hamilton. Plaintiff fails to show that these three defendants would have acted any differently had Plaintiff not filed the lawsuit against them. *See Spiegla v. Hull,* 371 F.3d 928, 942 (7th Cir. 2004). Defendants have produced evidence showing that in February 2003, four days after these defendants were served with process, *Plaintiff* threw pieces of torn paper out onto the prison's floor and received two disciplinary reports from a non-party. Defendant Bowers' only role in this matter was to investigate the charges in the disciplinary reports, and Plaintiff admitted to committing some of the violations for which he was charged. Furthermore, Plaintiff's claims that Bowers "falsified" Welch's witness statement in her investigation report is unavailing because Welch submitted an affidavit stating that Bowers interviewed her and that Bower's statements concerning her interview with her were accurately recorded in Bower's report.[2] Plaintiff does not dispute the facts Welch raised her in affidavit; therefore, Plaintiff has no evidence that Bowers retaliated against him, and, even if the date on Bower's report is incorrect, this fact is not "material" to Plaintiff's claim. *See Hardin,* 167 F.3d at 344 (a fact is material if it is outcome determinative).

---

[2] Plaintiff asks the Court to disregard Welch's affidavit because the affidavit states Welch signed it a day after Defendants' motion was filed. *See* Doc. 78-2, p.6. However, "so long as the documents comply with 28 U.S.C. §1746 . . . a district court should not be unnecessarily hyper-technical and overly harsh on a part who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985).

Similarly, it is undisputed that Plaintiff also admitted to the conduct complained about in the September 2003 disciplinary report for which defendants Hamilton and Britton found him guilty (Doc. 78-2, pp. 8, 12). Plaintiff claims he tore up a book but had the right to do so because it belonged to him. *Id.* Even if this is true, Plaintiff cannot get past summary judgment because Plaintiff failed to produce evidence that Plaintiff's lawsuit was the motivating factor in defendants Hamilton and Britton's decision. As the Seventh Circuit stated in *Hasan v. U.S. Department of Labor,* 400 F.3d 1001 (7th Cir. 2005), if a defendant has a "legitimate reason for the action that [is] so compelling that it would have caused him to take the same action even if [he has an] improper motive," he is not liable.

Finally, Plaintiff's retaliation claim against defendant Powers fails because Plaintiff points to no evidence demonstrating that defendant Powers performed the catheterization (and used excessive force in doing so) because Plaintiff engaged in constitutionally protected speech. During Plaintiff's deposition, counsel for defendant Powers asked Plaintiff why he believed defendant Powers retaliated against him, and Plaintiff replied that everything defendant Powers ever does to him is because of a lawsuit he filed in 2000. *See* Doc 67-2, p. 15; *see also* Doc. 80, p. 13. Plaintiff additionally claims that retaliation can be the only explanation why defendant Powers used excessive force during the catheterization because there was no other "legitimate reason" (Doc. 80. pp. 12-13). The Court does not find that a lawsuit that was filed in 2000 triggered conduct that occurred three years later; however, even if it did, this would not be enough to permit Plaintiff's claim to continue. *See Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000) (noting "[s]peculation based on suspicious timing alone ... does not support a reasonable inference of retaliation."). Moreover, Plaintiff's conclusory statements that retaliation could be the only reason why defendant Powers allegedly "assaulted' him is similarly insufficient. These conclusory

statements simply do not show a genuine issue of material fact that demonstrates Plaintiff's retaliation claim against defendant Powers should continue. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Sample v. Aldi Inc.*, 61 F.3d 544, 549 (7th Cir. 1995) (abrogated on other grounds) (noting "conclusory statements in an affidavit do not create an issue of fact.") (citations omitted).

It is therefore **RECOMMENDED** that Defendants' motions for summary judgment as to Plaintiff's retaliation claims against defendants Bowers, Britton, Hamilton and Powers be **GRANTED.**

### Plaintiff's Claim against defendant Powers for excessive force

As discussed above, the Court, in its threshold order, allowed Plaintiff to proceed with his excessive force claim against defendant Powers pursuant to 42 U.S.C. §1983 (Doc. 5). Liability under §1983 requires evidence of two elements: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski,* 327 F.3d 564, 566 (7th Cir. 2003) (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir. 1994); *Moore v. Marketplace Restaurant,* 754 F.2d 1336, 1352 (7th Cir. 1985).

The Eighth Amendment is the "substantive law that guides . . . excessive force claims." *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001). The Seventh Circuit stated:

> The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the unnecessary and wanton infliction of pain on prisoners. In cases involving the claimed use of excessive force, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. In conducting this inquiry, a court must examine a variety of factors, including the need for an application of force, the relationship

> between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. With regard to the last of these factors, while a plaintiff need not demonstrate significant injury to state a claim for excessive force under the Eight Amendment, a claim ordinarily cannot be predicated on a *de minimis* use of force.

*Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001) (internal citations and quotations omitted). Plaintiff claims that there is a genuine issue of material fact that shows his claim against Powers should go to trial because defendants Anderson and Bolin heard Plaintiff scream and tell defendant Powers he could not take the pain, Plaintiff visited the doctor several times soon after the procedure, and that even though Plaintiff initially consented to the catheterization, defendant Powers "yanked it out." In opposing defendant Power's motion, Plaintiff attaches several "sick request" slips and grievances that he claims defeats defendant's motion.

While the Court will not discuss all of Plaintiff's documents, the Court agrees with defendants' contention that although Plaintiff requested medical treatment soon after the procedure, most of Plaintiff's complaints concerned his stomach, back, and teeth. *See* Doc. 80-3. In addition, during Plaintiff's deposition, Plaintiff stated that the injuries he sustained as a result of the catheterization were that he experienced pain and stinging while he urinated for two to three days, and he was angry and humiliated (Doc. 67-2, pp. 14-15).

As noted above, Plaintiff is certainly not required to produce evidence that he suffered a significant injury to defeat defendant Power's motion. However, "an Eighth Amendment claim cannot be predicated on the de minimis use of force." *See Henderson v. Belfueil,* 2006 WL 2052968, **2 (7th Cir. Jul. 19, 2006) (affirming district court's decision to grant summary judgment in favor of nurses when Plaintiff's excessive force claim was that the nurses applied too much force in drawing his blood). It is undisputed that Plaintiff consented to catheterization initially, and Plaintiff simply has not shown that defendant Powers, in continuing to insert the

catheter despite Plaintiff's objections acted "maliciously and sadistically for the very purpose of causing harm" *Id. citing Harper v. Albert,* 400 F.3d 1052, 1065 (7th Cir. 2005). Consequently, it is **RECOMMENDED** that Defendant Power's motion for summary judgment as to Plaintiff's excessive force claim be **GRANTED.**

### Plaintiff's claims against Bolin and Anderson for failing to intervene

Plaintiff maintains that defendants Bolin and Anderson are liable under §1983 because they did not stop defendant Powers from continuing catheterizing him once they heard him tell defendant Powers to stop and did remove the catheter themselves. *See* Doc. 78-2. Defendants Bolin and Anderson have no medical training (Doc. 63-2, pp. 26, 27 30-31). In allowing Plaintiff to proceed against with his failure to intervene claim against defendants Bolin and Anderson, the Court referred to *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) where the Seventh Circuit stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972). To succeed on a failure to intervene claim against defendants Bolin and Anderson, Plaintiff must show that they "acted or *failed to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Fillmore v. Page,* 358 F.3d 496, 506 (7th Cir. 2004) (emphasis in original). "[P]resence without more falls short of a deliberate or reckless disregard of [a plaintiff's] constitutional rights." *Id.* "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being

used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994).

The Court finds the Seventh Circuit's decision in *Estate of Darlene Allen v. City of Rockford*, 349 F.3d 1015 (7th Cir. 2003) instructive. There, a plaintiff filed a §1983 claim against two non-medical officers for failing to intervene with the doctor's decision to extract urine and blood from her during an event the doctor determined was an emergency situation. Unlike in this case, the plaintiff did give her consent to the doctor's procedure. Although this case involved a plaintiff who was not incarcerated at the time the doctor performed the procedure, the Court noted that it was entirely reasonable for non-medical professional "who had no training beyond CPR . . . not to question a licensed physician's determination . . ." *Id.* at 1020.

Here, the Court does not find there is a triable issue on this claim because, as non-medical professionals who were only present during the procedure because of security reasons, defendants Bolin and Anderson certainly did not have a "realistic opportunity" to prevent defendant Powers from continuing the procedure once the catheter was inside Plaintiff's body. *See Fillmore,* 358 F.3d 496 (citing *Miller v. Smith,* 220 F.3d 491 (7th Cir. 2000). Morever, as the *City of Rockford* suggests, a decision not to intervene in this case was appropriate. *City of Rockford*, 349 F.3d at 1020. (7th Cir. 2003). Finally, the Court's determination that defendant Powers did not commit a constitutional violation defeats Plaintiff's claim against Bolin and Anderson. *See Fillmore v. Page,* 358 F.3d 496, 506 (7th Cir. 2004).

**Plaintiff's claims against defendants Frey and Walker**

In addition to the claims discussed above arising from the three incidents the Court previously mentioned, Plaintiff alleged in his complaint that by denying him three medical books he received in the mail, defendant Roger Walker Jr., the director of the IDOC, and defendant Shelton Frey, the warden at TCC, retaliated against him because Plaintiff intended to use these books in researching the claims he has in other lawsuits. *See* Doc. 5. During Plaintiff's deposition, however, defendants' counsel asked Plaintiff to exactly describe what these two defendants did to trigger his claims and Plaintiff stated that he "really can't substantiate the retaliation claims against those two." (Doc. 63-2, p. 11). Defendant additionally contends that the following dialogue between defendants' counsel and Plaintiff shows Plaintiff has abandoned his retaliation claims against Walker and Frey:

> Q: Count 13 against Defendants Frey and Walker, what did Mr. Frey do to you?
>
> A: Honestly nothing.
>
> Q: Okay. What did Mr. Walker do to you?
>
> A: Honestly nothing.
>
> Q: Okay. What did Mr. Walker do to you?
>
> A: Nothing. Too easy, huh?

Doc. 63-2, p. 11. In his response to defendants' contention, Plaintiff maintains that he has not abandoned his claims against defendants Walker and Frey and that when he made those statements, he was referring to Count 12 that the Court previously dismissed (Doc. 78-2, p. 17). He further argues that he would "never abandon his claims." *Id.* But even construing the evidence before it in the light most favorable to Plaintiff, his conclusory statement that he has not abandoned his claims does not show the Court what evidence Plaintiff has that supports his assertion that he

engaged in a protected form of speech, [and that defendants Frey and Walker] retaliated against him for doing so. *See Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996).

## Conclusion

For the reasons discussed above, it is **RECOMMENDED** that Defendants' motions (Docs. 63, 67) for summary judgment is **GRANTED** in their entirety and that the case is dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 9, 2009**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**